WILLIAM K. HARRINGTON  **HEARING DATE: MAY 3, 2018**
United States Trustee for Region 2  **HEARING TIME: 9:30 a.m.**
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
Telephone: (212) 510–0500
By: Marylou Martin, Trial Attorney

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK        x
-------------------------------------------------------
In re:                                              :
                                                    :  Case No. 17-46983 (ESS)
KARLENE EVADNE GAYLE,                               :
                                                    :  (Chapter 7)
                  Debtor.                           :
-------------------------------------------------------  x

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES
TRUSTEE'S MOTION TO DISMISS CASE UNDER
11 U.S.C. §§ 707(b)(1) AND 707(b)(3)**

**TO:  THE HONORABLE ELIZABETH S. STONG
       UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586 (a)(3) and (5), by and through his undersigned attorney, hereby files this Memorandum of Law in Support of the United States Trustee's Motion to Dismiss Case under 11 U.S.C. §§ 707(b)(1) and (b)(3), as an abuse of the Bankruptcy Code based on bad faith and/or totality of the circumstances. In support of the Motion, the United States Trustee respectfully represents and alleges as follows:

**I. INTRODUCTION**

This case should be dismissed under 11 U.S.C. §§ 707(b) (1) and (3) for abuse of the provisions of Chapter 7.  Based upon her 2017 tax returns, the Debtor earns an income in excess of $164,000, which is nearly $100,000 above the median income for a family of two living in New

1

York. The United States Trustee has determined, after analysis of the Debtor's schedules, statements, pay advices and Tax Returns, that this case should be dismissed under 11 U.S.C. §§ 707(b)(1) and (3) for abuse of the provisions of chapter 7. The Debtor over withholds on taxes, which resulted in a tax refund in the amount of $9,000 for the year 2017. The Debtor, therefore, has approximately $750 in additional net income that is not reflected on Schedules I and J. Furthermore, the Debtor deducts $535 as a monthly business "loss" on Schedule I. While the Debtor lists a 25% interest in a business known as Team Demolition MMA, her 2017 tax return does not reflect a business loss and the Form 122A-1 (the "Means Test Form") does indicate a business loss. In addition, according to her pay advices, the Debtor received from her employer a lump sum *net* payment of approximately $15,000 days within days of the bankruptcy filing, yet reported that she only had $500 on deposit in the bank at the time of the bankruptcy filing. The bankruptcy petition does not indicate that any large payments or transfers were made within 90 days to one year of the December 31, 2017 filing date.[1] Moreover, the Debtor spends over $2,300 per month on car payments and car insurance for luxury vehicles that are extraordinary expenses for a chapter 7 debtor seeking to discharge debt based upon a claim of the inability to pay. More striking is that, according to the Schedules, the Debtor obtained one of the car loans in July 2017 and the other in December 2017 – the very month this chapter 7 case was filed.[2] It is unreasonable and an indicia of bad faith for the Debtor to obligate herself on the purchase of two luxury vehicles with combined monthly payments of $1,136, including one loan taken out the very month she was preparing to file chapter 7. These luxury vehicles, in turn, impact the Debtor's auto insurance cost

---

[1] The Debtor failed to file the appropriate documents as Employee Income Records. ECF Doc. No. 4. It was discovered after reviewing pay advices produced upon the request of the United States Trustee that a $25,000 payment had been made to the Debtor on December 13, 2017, which resulted in a net payment to the Debtor of approximately $15,000 just18 days prior to the Petition Date. See Oliver Decl., ¶25; Exhibit A.

[2] The Debtor indicates on the Statement of Financial Affairs that a BMW vehicle was repossessed in May 2017 and lists BMW Financial Services as an unsecured creditor in the amount of $40,148. See ECF Doc. No. 1, Schedule F.

which, according to Schedule I is a whopping $1,186 per month. Finally, the Debtor's budget includes a "personal care products and services" expense of $550 per month, which is excessive for a family of two.

It is evident from the expenses listed on Schedule J that the Debtor chooses to spend her income on an extravagant lifestyle, primarily focused on luxury vehicles and its associated insurance expense and personal care, rather than pay her creditors. If: (1) the $15,000 payment the Debtor received in January 2018 is recovered, (2) certain extraordinary and unnecessary expenses are deducted from the Debtor's budget, (3) the Debtor forfeits her interest in a business that results in a monthly loss of income in the amount of $535, and (3) the Debtor ceases to over withhold on taxes, the United States Trustee believes the Debtor would have sufficient monthly disposable income to repay her general unsecured debt of approximately $53,000 in full, exclusive of her student loan obligations.[3] Even if her student loans were included in her debtor repayment plan under chapter 13, the Debtor would, nevertheless, be able to fund approximately 47% of her total unsecured debt of approximately $199,000 under a chapter 13 repayment plan.

A modest reduction in the Debtor's expenses along with appropriate withholding of taxes, the recovery of approximately $15,000 received in January 2018 and the stemming of the Debtor's monthly business loss would result in sufficient disposable income available for a meaningful distribution to her creditors. Based on bad faith and a totality of circumstances, granting relief under Chapter 7 of the Bankruptcy Code is an abuse of the bankruptcy process. Accordingly, the Debtor's Chapter 7 case should be dismissed under 11 U.S.C. §§ 707(b)(1) and (b)(3).

---

[3] The Debtor lists an additional $143,000 owed in student loans on Schedule F, which is being paid by the Debtor in monthly payments of $645, according to Schedule J. See Schedule F and Schedule J.

## II. BACKGROUND

*General Background*

1. On December 31, 2017 (the "Petition Date"), the Debtor commenced this case with the filing of a voluntary petition (the "Petition"), along with the Means Test Form under chapter 7 of the Bankruptcy Code. ECF Doc. No. 1. See Declaration of Janease Clarke Oliver in Support of United States Trustee's Motion (the "Oliver Decl."), ¶3.

2. Bryant A. Roman, Esq. ("Counsel") executed the Petition as counsel for the Debtor. See Oliver Decl., ¶4; ECF Doc. No. 1.

3. Gregory Messer (the "Trustee"), was appointed interim trustee and thereafter permanent trustee pursuant to § 702(d) of the Bankruptcy Code. See Oliver Decl., ¶5; Docket.

4. Pursuant to 11 U.S.C. § 341(a), the initial creditors' meeting was held on February 6, 2018 (the "Creditors' Meeting"), and has since been continued. See Oliver Decl., ¶6; Id.

5. The deadline to object to the Debtor's discharge is April 9, 2018. See Oliver Decl., ¶7; Id.

*The Debtor's Petition and Schedules*

6. The Debtor indicated on page 6 at paragraph 16 of the Petition that her debts are primarily consumer debts, as defined in 11 U.S.C. § 101(8). See Oliver Decl., ¶8; ECF Doc. No. 1.

7. The Debtor is an individual who resides at 785 Ocean parkway, #1C, Brooklyn, New York. See Oliver Decl., ¶9; Id.

8. According to Schedules A and B, the Debtor owns no real property and has miscellaneous personal property, including two vehicles, valued at $33,449. See Oliver Decl.,

¶10; Schedules A and B.

9.  According to Schedule D, the Debtor owes $28,385 to Capital One Auto Finance secured by a 2016 Audi that was incurred in December 2017 and $18,536 to Credit Acceptance secured by a 2011 BMW that was incurred in July 2017, for a total of $46,921 in secured debt. See Oliver Decl., ¶11; Schedule D.

10.  According to Schedule E, the Debtor has an unsecured priority debt due to the Internal Revenue Service in the amount of $2,500 for taxes that became due in 2013. See Oliver Decl., ¶12; Schedule E.

11.  On Schedule F, the Debtor has listed student loan obligations in the amount of $143,884 and other general unsecured debt totaling $53,129. See Oliver Decl., ¶13; Schedule F.

12.  Schedule I states that the Debtor is employed as a nurse administrator at Island Ambulatory Surgery Center LLC with a gross monthly income of $12,500. After monthly deductions of $4,865 for taxes, $223 for insurance and $535 as a loss for operating a business, the Debtor lists her net income at $6,875. See Oliver Decl., ¶14; Schedule I.

13.  The Debtor lists one dependent, her 21 year-old nephew. See Oliver Decl., ¶15; Schedule J.

14.  The Debtor's monthly household expenses for a family of two total $7,533, and include the following: (i) rent in the amount of $1,900.00 (ii) food and housekeeping supplies in the amount of $600; (iii) personal care products and services in the amount of $550.00; (iv) vehicle insurance in the amount of $1,186.00; (v) student loan payments in the amount of $645 and (vi) car payments totaling $1,136.00. See Oliver Decl., ¶16; Id.

15.  According to the Debtor's Schedules I and J, the Debtor's monthly net household income is $6,875, while her expenses are $7,533, which results in a monthly deficit

of $657.  See Oliver Decl., ¶17; Schedules I and J.

*The United States Trustee's Investigation of the Debtor's Financials*

    16.    The United States Trustee requested from the Debtor certain information, including pay advices for the six month period prior to filing as well as Tax Returns for 2016 and 2017.  See Oliver Decl., ¶18.

    17.    The Debtor, through Counsel, responded by providing the Debtor's 2016 and 2017 Tax Returns and certain pay advices, although not all that had been requested.  Id. at ¶19.

    18.    According to the Debtor's Tax Returns, the Debtor's 2017 gross income was $164,826, and she was entitled to a refund from the IRS in the amount of $8,168, as well as a refund from NYS in the amount of $1,077.  See Oliver Decl., ¶20.

    19.    According to the Debtor's Schedules B and I, she has a 25% ownership interest in Total Demolition MMA, and incurs a business loss in the amount of $535 per month.  See Oliver Decl., ¶21; Schedules B and I.

    20.    The Debtor's 2017 personal tax return does not reflect any business income or loss.  See Oliver Decl., ¶22.

    21.    The Debtor's pay advice from Island Ambulatory Surgery Center, LLC for the period 11/10/17 through 11/23/17 indicates the following: regular year-to-date earnings of $47,307.69 and holiday year-to-date earnings of $1,153.84, for total earnings through November 23, 2017 of $48,461.93.  Id. at ¶23, Exhibit A.

    22.    The Debtor's pay advice from Island Ambulatory Surgery Center, LLC for the period 11/24/17 through 12/07/17 indicates the following: regular year-to-date income of $53,076.92, holiday year-to-date income of $1,153.84 and admin pay year-to-date income in the amount of $25,000, for total earnings through December 7, 2017 of $79,230.76.  Id. at ¶24; Exhibit A.

23.    The Debtor's pay advice from Island Ambulatory Surgery Center, LLC for the period 12/08/17 through 12/21/17 indicates the following: regular year-to-date income of $56,538.46, holiday year-to-date income of $1,153.84 and admin pay year-to-date income in the amount of $25,000, for total earnings through December 21, 2017 of $84,999. [4] Id. at ¶25; Exhibit A.

### III. ARGUMENT

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") provides for the dismissal of a chapter 7 proceeding where there is either a presumption of abuse or, if no presumption arises, the totality of the circumstances of the debtor's financial condition evidence abuse. Specifically 11 U.S.C. Section 707(b) provides:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee..., may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter....

Where a presumption of abuse does not arise, or the United States Trustee chooses to not proceed under Section 707(b)(2), a chapter 7 case may still be dismissed based upon the totality of the circumstances. Section 707(b)(3) provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or

---

[4] It should be noted that the Debtor was employed by Montefiore Medical Center, at least through June 22, 2017. According to her pay advices, the Debtor first became employed by Island Ambulatory Surgery Center on July 31, 2017.  See Oliver Decl., at ¶25.  As of December 31, 2017 the Debtor had been employed at Island Ambulatory Surgery Center for a period of five months, during which she earned the sum of $84,999. In addition, in 2017 the Debtor earned the sum of $80, 414 from Montefiore Medical Center.  Id.  According to the Debtor's Tax Returns, the Debtor's total earnings for 2017 were $164,826.  Id.

> (B) totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA"), Section 707(b) expressly stated "there shall be a presumption in favor of granting the relief requested by the debtor." Significantly, the BAPCPA eliminated this presumption. See In re Doherty, 374 B.R. 288, 290 (Bankr. D. Kan. 2007) and In re Colgate, 370 B.R. 50 (Bankr. E.D.N.Y. 2007). In addition, the BAPCPA lowered the standard for dismissal of a chapter 7 case from a required finding of "substantial abuse" in the debtor's filing to a mere finding of "abuse." Id.

The Second Circuit has established a totality of the circumstances test for determining abuse under section 707(b). In re Kornfield, 164 F.3d 778 (2d Cir. 1999). The court set forth various factors that it will consider in an evaluation under section 707(b). The first factor is whether the debtor has an ability to pay. This factor includes a determination on whether the budget is excessive. If, after this analysis, the court determines that the debtor has an ability to pay, it will look to see if there are any circumstances that may militate against the debtor's ability to pay or constitute aggravating factors to show dishonesty or bad faith, or that the debtor is not truly needy.

> Specifically, the court will review whether:
>
> (1)  the bankruptcy was filed because of sudden illness, calamity, disability, or unemployment;
> (2)  whether the debtor has made consumer purchases or cash advances far in excess of an ability to repay;
> (3)  whether the petition was filed in good faith;
> (4)  whether the debtor exhibited good faith and candor in filing his schedules and other documents;
> (5)  whether the debtor has engaged in "eve of bankruptcy purchases";

(6) whether the debtor was forced into chapter 7 by unforeseen or catastrophic events;
(7) whether the debtor's disposable income permits the liquidation of his consumer debts with relative ease;
(8) whether the debtor enjoys a stable source of future income;
(9) whether the debtor is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code;
(10) whether there are state remedies with the potential to ease the debtor's financial predicament;
(11) whether there is relief obtainable through private negotiation, and to what degree;
(12) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities;
(13) whether the debtor has significant retirement funds, which could be voluntarily devoted in whole or in part to the payment of creditors;
(14) whether the debtor is eligible for relief under chapter 11 of the Bankruptcy Code;
(15) whether there is no choice available to the debtor for working out his financial problems other than chapter 7, and whether the debtor has explored or attempted other alternatives.

In re Carlton, 211 B.R. 468, 478 (Bankr. W.D. N.Y.), aff'd sub nom. Kornfeld v. Schwartz (In re Kornfield) 214 B.R. 705 (W.D.N.Y), aff'd In re Kornfeld, 164 F.3d 778 (2d Cir. 1999).

**§707(b) and the Kornfield Factors Applied**

In this case, the first part of §707(b) is satisfied. The Debtor is an individual, and her obligations are substantially consumer debts. See Petition at Page 6.  The Debtor has a stable and steady source of future income. The Debtor has been, and remains, gainfully employed and earned $121,329 in 2016 and $164,826 in 2017. See Oliver Decl., ¶20.  According to her paystubs, the Debtor was employed by Montefiore Medical Center and then was hired by Island Ambulatory Surgery Center. It appears that there was no significant break of employment while the Debtor transitioned to her current position.

The Debtor has not exhibited good faith and candor in filing her schedules and other documents.  First, the Debtor filed the case on December 31, 2017, within days of becoming entitled to $25,000 in a lump sum pay from her employer (the net amount of which was approximately $15,000).  It is apparent that the Debtor took advantage of the six month calculation period for means test purposes, which ends with the last pay advice for the month

9

preceding the Petition Date.  By filing the case in December 2017, the additional $25,000 in income she received in December was not be included in calculating income on the means test. More troubling is the fact that the Debtor failed to account for these additional funds. The Debtor indicates a bank balance of $500 as of the Petition Date, no payments in excess of $600 to any creditor within 90 days of filing and no transfers within two years of filing.  <u>See</u> Schedule B, SOFA, questions 6 and 18.

In addition, certain expenses listed in the budget appear to be inaccurate, unreasonable or excessive, including but not limited to the amounts for personal care and vehicle insurance. <u>See</u> Schedule I.  These two expenses alone aggregate to $1,736 per month.  Moreover, and as discussed below, the Debtor also lists car payments on two luxury vehicles totaling $1,136 per month.  When reviewing the Debtor's expenses, the Court may "make downward adjustments where necessary."  <u>In re Felske</u>, 385 B.R. 649 (Bankr. N.D. Ohio 2008).  In making these adjustments, the Court may be governed by principles of frugality.  <u>In re Burge</u>, 377 B.R. 573, 578 (Bankr. N.D. Ohio 2007). It may be abusive for the Debtor to continue to pay her excessive expenses without making an effort to repay her unsecured creditors where the payments consume income that otherwise could be used to pay these creditors. <u>In re Mooney</u>, 313 B.R. 709 (Bankr. N.D. Ohio 2004).

Another factor that raises the concern of the United States Trustee is that the Debtor obtained a car loan for the purchase of an Audi within 30 days of the Petition Date. In doing so, the Debtor obligated herself on a loan payment in the amount of $619 per month, at a time when she knew or should have known that she would be seeking relief under chapter 7 of the Bankruptcy Code.  <u>See</u> Schedules D and I.  Intentionally obtaining an auto loan to purchase a luxury vehicle that would create a greater financial burden and increase monthly expenses by over $600 per month on the eve of a bankruptcy filing is an indicia of bad faith, and should be

taken into careful consideration in determining the Debtor's motives in filing this case under the totality of circumstances.

The Debtor's Schedule I lists a business loss of $535 per month, apparently related to operation of Total Demolition MMA, a business which provides mixed martial arts instruction. It is unclear why the Debtor, who filed a budget indicating that she is unable to meet her expenses, would continue in a business that loses a considerable amount of money each month. Efforts to stem the loss of income by forfeiting the business seems like an easy fix, which would increase the income for Debtor and her nephew who claim to be unable to meet their financial obligations on an income of approximately $165,000 a year. It should be noted that while Schedule I lists $535 as a monthly business loss, the Debtor's means test does not include a business loss. See Means Test Form, Line 5. The Debtor's 2017 Tax Returns also fail to reflect a business loss.

As yet another indication of the Debtor's lack of candor, the Debtor over withholds on taxes, which resulted in the Debtor receiving a $9,000 tax refund in 2017. See Oliver Decl., ¶20. If the Debtor made the necessary payroll adjustments and withheld the appropriate amount of income for tax purposes, the Debtor's net income would increase by approximately $750 per month. See, eg., In re Addison, 2018 Bankr. LEXUS 62*, 25 (January 11, 2018)( On the Means Test "[a] debtor who is over-withholding from his or her paycheck may not deduct the amount which exceeds his or her actual tax liability").

**An Increase in the Debtor's Available Income and a Reduction in the Debtor's Expenses**

Overall, the Debtor's Schedule I net income can increase by $1,285 if the Debtor stops over-withholding taxes and forfeits her 25% interest that operates at a substantial loss. These two modifications, alone, would provide available income of over $600 per month. In addition, a modest decrease on automobile insurance of $200 per month (less than 20% of the

current monthly payment) as well as reduction in monthly personal care expense from $550 to $200 per month would provide for additional available income of $550 per month. By simply making these moderate changes to the Debtor's monthly income and expenses, there would be an increase of available net monthly income of $1,077 – an amount which is more than sufficient to repay the Debtor's unsecured claims (excluding student loans) of $53,000 over a five year chapter 13 plan. This would be the case even with the exorbitant car loan payments for two luxury vehicles. It is unclear, however, whether the car expenses for both vehicles are necessary. As previously noted, even if the Debtor's student loans were included in the repayment under chapter 13, these modest changes in income and expenses would result in the repayment of approximately 47% of all of the Debtors' general unsecured debt. [5]

## IV. CONCLUSION

The United States Trustee's analysis reveals that the Debtor is an individual with regular income who has the resources to repay a significant portion of her debts under a Chapter 13 plan. Accordingly, this case should be dismissed pursuant to 11 U.S.C. § 707(b)(3) because, based upon bad faith and totality of the circumstances, the Debtor has significant surplus income to fund a chapter 13 plan and the granting of a discharge to the Debtor would constitute an abuse of the Bankruptcy Code. The United States Trustee respectfully requests that the Court

---

[5] The Debtor's Schedule J indicates that the Debtor is repaying her student loans through monthly payments. The United States Trustee believes that if the Debtor is repaying all general unsecured debt, other than student loans, in full under chapter 13, the Debtor will be able to continue making student loan payments outside of a chapter 13 plan, so that it would not be necessary to include the student loans in calculating the general unsecured debt to be repaid under chapter 13.

Alternatively, if all general unsecured debts are calculated for the purpose of repayment under chapter 13, the Debtor would have the total sum of $ 1,722 per month ($1,077 plus $645) available to fund a chapter 13 plan. Over a 60 month period, and after consideration of the chapter 13 trustee's commission, this would result in the repayment of approximately $93,000 of the $199,000 in total general unsecured debt over 5 years, or a 47% distribution to all general unsecured creditors. Under this scenario, not only would a significant portion of the Debtor's student loan obligations would be repaid under the chapter 13 plan, the student loan companies also would be stayed from pursing the Debtor during the period of the chapter 13 repayment period, and any unpaid balance due on student loans could then be repaid after the chapter 13 plan was paid in full.

enter an order dismissing this chapter 7 case in accordance with 11 U.S.C. §§ 707(b)(1) and (3) and grant such other relief as it may seem just and proper.

Dated: New York, New York
        April 4, 2018

                              WILLIAM K. HARRINGTON,
                              UNITED STATES TRUSTEE

                    *By:*    */s/ Marylou Martin*
                             Marylou Martin
                             Trial Attorney